# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CRIMINAL NO. 06-485 |
| v. : | |
| SEAN HAGINS : | |

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

Defendant is a repeat offender with convictions for drug trafficking, obstruction of justice and forgery. He is presently under supervision by the State of New Jersey for a May 19, 2006 Drug Distribution conviction. He has been indicted in this District, as a felon in possession, for threatening another motorist with a gun from a moving car. In addition, the government can establish that, since being caught with that Glock on I-95 in December 2004, defendant has straw purchased more than 50 black-market guns for re-sale on the streets of Trenton, New Jersey, and has engaged in multiple crack cocaine sales. Given the sentence defendant faces, his lack of legitimate contacts with this District, his criminal history, and his continuing criminal conduct, it is clear that no condition or combination of conditions will reasonably assure the defendant's appearance as required and/or the safety of the community. The government therefore moves, pursuant to 18 U.S.C. §§ 3142(e) and (f), for a detention hearing and pretrial detention of the defendant. In light of the recent change to the pretrial detention statute, which make it clear that detention is available for "any felony that . . . involves possession of a firearm" under section 922(g)(1), PL 109-248, HR 4472, pretrial detention of defendant Hagins is clearly appropriate.

In addition, Hagins has previously threatened a witness to his drug and gun dealing activities. Given this person's cooperation with federal authorities investigating Hagins, it is clear that no condition or combination of conditions will reasonably assure the safety of this critical witness against Hagins. Thus, pretrial detention is also appropriate under 18 U.S.C. §§ 3142(f)(2)(B) as there is "a serious risk that . . . [Hagins] will . . . threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness . . . ."

**I.     THE FACTS**

In support of this motion, the government makes the following representations and proposed findings of fact:

    **A.     Probable Cause And The Evidence In This Case**

1. In light of the indictment, there is probable cause to believe that the defendant has violated Title 18, United States Code, Section 922(g)(1) by possessing a Glock, 40 caliber pistol as a convicted felon. Indeed, there is probable cause to believe that he possessed this gun, loaded with sixteen live rounds, while driving on I-95, and that he used it to threaten a fellow motorist.

2. The evidence in this case is strong.

    a. On December 29, 2004, Alexander Panchenko was traveling North on I-95 near the Castor Avenue exit when a white Audi with New Jersey plates repeatedly cut in front of him. Panchenko changed lanes in an effort to avoid the Audi, but the Audi continued to follow and cut in front of him.

    b. When the traffic became congested and slowed almost to a stop in the area of Bridge Street, the Audi drove up in the breakdown lane beside Panchenko's

car. The driver, an African-American male with dreadlocks, spit at Panchenko and repeatedly yelled at Panchenko to pull over.

    c.  When Panchenko ignored him, the driver pointed a gun out his window at Panchenko. Panchenko again tried to get away from the Audi, ultimately driving in the breakdown lane himself. The Audi continued to follow him.

    d.  Just before the Cottman Avenue exit, Panchenko called 9-1-1 on his cell phone. The driver of the Audi continued to yell at Panchenko and then accelerated and got off the highway at the Cottman Avenue exit. When Panchenko saw a police car at the Academy Road exit, he pulled over to report what had happened. Apparently the incident had already been broadcast over police radio because the officer advised that he was waiting for the Audi to come past. Shortly thereafter, Panchenko was advised by the officer that the Audi had been stopped.

    e.  Philadelphia Police officers James Cullen, Sr., James Cullen, Jr. and James Coolen were meeting with an informant in the area of Frankford and Tyson Avenues when they heard the radio report about the white Audi whose driver had brandished a weapon. They immediately proceeded North on Frankford toward Cottman. When they reached Cottman, the officers saw the Audi stopped on Cottman at the light. They got behind the Audi and radioed for a marked car to make the stop. The Audi was stopped by a marked unit at Cottman and Hawthorne.

    f.  All four Philadelphia Police officers approached the stopped Audi. Before any of them had an opportunity to say anything, the driver of the car - later

identified as Sean Hagins - repeatedly insisted that he had only pointed the face-plate of his radio at the other driver.

       g.     The occupants of the car were ordered out and Cullen, Jr. searched the passenger compartment. After a few minutes Cullen, Jr. found a Glock   It had been tucked into a space between the center console and floor of the Audi in the driver's foot-well.

       h.     Shortly after Cullen, Jr. found the gun, Panchenko was brought to the scene by the officer from Academy Road. Panchenko positively identified Hagins as the driver of the Audi who had pointed a gun at him. Later that day, Panchenko gave a formal statement during which he identified the gun as a black pistol that "looked something like a Glock."

### B.   <u>Continuing Criminal Conduct Reflecting Danger To The Community.</u>

    1.    Hagins' current charges did not spell the end of his continuing danger to the community. The government has developed substantial evidence that Hagins has been involved in the illegal sale of crack cocaine as well as the illegal sale of hand guns in Trenton, New Jersey.

       a.     Between September 2004 and June 2005, a Pennsylvania resident purchased more than 50 hand guns from registered gun dealers in the Eastern District of Pennsylvania. This resident made each of these purchases as a straw purchaser in return for crack cocaine.

     b.  The straw purchaser has identified more than 45 of these weapons as having been purchased for, or on behalf of, Sean Hagins.

     c.  In a tape recorded conversation between Hagins and the Pennsylvania resident on January 31, 2006, Hagins questioned the Pennsylvania resident about whether he had been contacted by the authorities in connection with any of the guns that the Pennsylvania resident had provided to Hagins. In the course of this discussion, several specific weapons were discussed. For example, Hagins told the Pennsylvania resident that a TEC-9 with a muffler, that the Pennsylvania resident had procured for Hagins, had turned up on Wood Street in Trenton.

     d.  ATF's investigation shows that a TEC-9, that the Pennsylvania resident purchased on October 20, 2004, was recovered by the Trenton Police on January 24, 2006 on Wood Street in Trenton. When it was recovered, the TEC-9 had a muffler attached.

     e.  In the course of the same January 31, 2006 conversation, as well as other conversations recorded on February 8 and February 9, 2006, Hagins expressed interest in having the Pennsylvania resident resume making straw purchases for him.

   2.  Also on January 31, 2006, in a recorded conversation, Hagins sold $100 of crack cocaine to the Pennsylvania resident.

### C. Danger To Witness

1. In the recorded conversations, Hagins made it clear that there was a lot of demand for weapons in connection with Trenton's ongoing gang wars. Although Hagins claimed to be reluctant to get involved in a gang war, Hagins recognized that the gang war made his guns more valuable.

2. During the course of the conspiracy to make straw purchases of weapons, Hagins warned the Pennsylvania resident who was making straw purchases that Hagins and his people knew where the Pennsylvania resident lived. Given Hagins' gang connections, and given the potential consequences to Hagins from the witness' testimony, this threat to a federal witness must be taken seriously, and provides an additional ground to detain Hagins.

### D. Maximum Penalties

The total maximum penalty defendant faces on the current indictment is ten years imprisonment. However, in light of defendant's criminal history, the altered or obliterated serial number, and the fact that the defendant possessed his Glock in connection with another felony, the government conservatively estimates the total sentencing guidelines range for the defendant's present charges alone to be 92 to 115 months in prison under U.S.S.G. § §2K2.1. Accordingly, the defendant has a significant incentive to flee.

E.  **Criminal Record**

   a.  Defendant has four New Jersey felony convictions:

   (i) a January 15, 2004 arrest, resulting in a May 19, 2006 conviction for distribution of heroin and cocaine, for which Hagins was sentenced to four years' probation;

   (ii) an August 29, 1997 arrest, resulting in a January 5, 2001 conviction for forgery, for which Hagins was sentenced to five years' imprisonment with two and one-half years of parole ineligibility;

   (iii) a January 25, 1991 arrest, resulting in a September 20, 1991 conviction for obstruction of justice, for which Hagins was sentenced to 180 days imprisonment and two years probation; and

   (iv) a November 22, 1989 arrest, resulting in a July 26, 1991 conviction for possession of cocaine with intent to distribute for which Hagins was sentenced to four years' imprisonment with two years parole ineligibility.

   b.  Defendant also has four Municipal Court convictions:

   (i) an August 20, 2005 arrest resulting in April 24, 2006 conviction for failure to turn controlled dangerous substance over to police;

   (ii) a May 2, 1997 arrest, resulting in an April 10, 2003 conviction for violation of a local ordinance.

   (iii) an October 25, 2000 arrest resulting in a June 21, 2005 conviction for possession of marijuana/hashish; and

(iv) an August 22, 1997 arrest, resulting in an August 23, 1997 conviction for possession of marijuana/hashish.

F. **Prior History of Failures to Appear and Abide by Court Supervision**

On January 5, 2001, defendant was sentenced to five years imprisonment with two and one-half parole ineligibility period for a forgery conviction. This would have placed defendant under New Jersey state court supervision as of December 29, 2004, the day on which he threatened Alexander Panchenko with a loaded Glock. It would also have placed him on court supervision throughout the September 2004 through June 2005 period in which Hagins was trafficking in firearms with the Pennsylvania resident. Moreover, the current crime, as well as the as yet uncharged firearm trafficking crimes, were committed after Hagins had been arrested for, and while charges were pending against Hagins as a result of, the conduct resulting in his 2001 forgery conviction and his 2005 possession of marijuana/hashish conviction.

G. **Other Identities**

1. Defendant has used six known aliases, suggesting that he is a substantial risk of flight.

H. **Lack Of Community Ties/Employment**

1. The defendant has no legitimate ties to the Eastern District of Pennsylvania. While he has an extensive record of using this District to make straw purchases of firearms, and of threatening motorists on the highways of this district, the defendant has no legitimate ties to this District that are known to the government.

II. **CONCLUSION**

When all these factors are viewed in light of the substantial sentence defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required and/or the safety of the community.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

    Respectfully submitted,

    PATRICK L. MEEHAN
    United States Attorney


    /s/ Richard P. Barrett
    RICHARD P. BARRETT
    Assistant United States Attorney
    Chief, Firearms Section


    /s/ Paul G. Shapiro
    PAUL G. SHAPIRO
    Assistant United States Attorney

Dated: November 2, 2006

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | | CRIMINAL NO. 06-485 |
| v. | : | |
| | : | |
| SEAN HAGINS | | |

## PRETRIAL DETENTION ORDER

AND NOW, this _____ day of _____, 2006, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

(a) the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

(b) the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

1. There is probable cause to believe that the defendant has violated Title 18, United States Code, Section 922(g)(1) by possessing a Glock, 40 caliber pistol as a convicted felon as charged in the Indictment.

2. The evidence in this case is strong:

a. On December 29, 2004, Alexander Panchenko was traveling North on I-95 near the Castor Avenue exit when a white Audi with New Jersey plates repeatedly cut in front of him. Panchenko changed lanes in an effort to avoid the Audi, but the Audi continued to follow and cut in front of him.

b. When the traffic became congested and slowed almost to a stop in the area of Bridge Street, the Audi drove up in the breakdown lane beside Panchenko's car. The driver, an African-American male with dreadlocks, spit at Panchenko and repeatedly yelled at Panchenko to pull over.

c. When Panchenko ignored him, the driver pointed a gun out his window at Panchenko. Panchenko again tried to get away from the Audi, ultimately driving in the breakdown lane himself. The Audi continued to follow him.

d. Just before the Cottman Avenue exit, Panchenko called 9-1-1 on his cell phone. The driver of the Audi continued to yell at Panchenko and then accelerated and got off the highway at the Cottman Avenue exit. When Panchenko saw a police car at the Academy Road exit, he pulled over to report what had happened. Apparently the incident had already been broadcast over police radio because the officer advised that he was waiting for the Audi to come past. Shortly thereafter, Panchenko was advised by the officer that the Audi had been stopped.

e. Philadelphia Police officers James Cullen, Sr., James Cullen, Jr. and James Coolen were meeting with an informant in the area of Frankford and Tyson Avenues when they heard the radio report about the white Audi whose driver had

brandished a weapon. They immediately proceeded North on Frankford toward Cottman. When they reached Cottman, the officers saw the Audi stopped on Cottman at the light. They got behind the Audi and radioed for a marked car to make the stop. The Audi was stopped by a marked unit at Cottman and Hawthorne.

   f. All four Philadelphia Police officers approached the stopped Audi. Before any of them had an opportunity to say anything, the driver of the car - later identified as Sean Hagins - repeatedly insisted that he had only pointed the face-plate of his radio at the other driver.

   g. The occupants of the car were ordered out and Cullen, Jr. searched the passenger compartment. After a few minutes Cullen, Jr. found a Glock  It had been tucked into a space between the center console and floor of the Audi in the driver's foot-well.

   h. Shortly after Cullen, Jr. found the gun, Panchenko was brought to the scene by the officer from Academy Road. Panchenko positively identified Hagins as the driver of the Audi who had pointed a gun at him. Later that day, Panchenko gave a formal statement during which he identified the gun as a black pistol that "looked something like a Glock."

  3. The total maximum statutory penalty defendant faces on his current charge is 10 years imprisonment. However, in light of defendant's criminal history, the altered or obliterated serial number, and the fact that the defendant possessed his Glock in connection with another felony, the estimated sentencing guidelines range for the defendant's present charges is 92 to 115 months. Accordingly, the defendant has a substantial incentive to flee.

4. Even beyond the current charges, defendant poses a significant danger to the community. The government has developed substantial evidence that Hagins has been involved in the illegal sale of crack cocaine as well as the illegal sale of hand guns in Trenton, New Jersey.

    a. Between September 2004 and June 2005, a Pennsylvania resident purchased more than 50 hand guns from registered gun dealers in the Eastern District of Pennsylvania. This resident made each of these purchases as a straw purchaser in return for crack cocaine.

    b. The straw purchaser has identified more than 45 of these weapons as having been purchased for, or on behalf of, Sean Hagins.

    c. In a tape recorded conversation between Hagins and the Pennsylvania resident on January 31, 2006, Hagins questioned the Pennsylvania resident about whether he had been contacted by the authorities in connection with any of the guns that the Pennsylvania resident had provided to Hagins. In the course of this discussion, several specific weapons were discussed. For example, Hagins told the Pennsylvania resident that a TEC-9 with a muffler, that the Pennsylvania resident had procured for Hagins, had turned up on Wood Street in Trenton.

    d. ATF's investigation shows that a TEC-9, that the Pennsylvania resident purchased on October 20, 2004, was recovered by the Trenton Police on January 24, 2006 on Wood Street in Trenton. When it was recovered, the TEC-9 had a muffler attached.

e. In the course of the same January 31, 2006 conversation, as well as other conversations recorded on February 8 and February 9, 2006, Hagins expressed interest in having the Pennsylvania resident resume making straw purchases for him.

f. Also on January 31, 2006, in a recorded conversation, Hagins sold $100 of crack cocaine to the Pennsylvania resident.

5. The defendant has a significant criminal history, including a prior history of drug offenses and failure abide by court supervision.

a. Defendant has four New Jersey felony convictions:

(i) a January 15, 2004 arrest, resulting in a May 19, 2006 conviction for distribution of heroin and cocaine, for which Hagins was sentenced to four years' probation;

(ii) an August 29, 1997 arrest, resulting in a January 5, 2001 conviction for forgery, for which Hagins was sentenced to five years' imprisonment with two and one-half years of parole ineligibility;

(iii) a January 25, 1991 arrest, resulting in a September 20, 1991 conviction for obstruction of justice, for which Hagins was sentenced to 180 days imprisonment and two years probation; and

(iv) a November 22, 1989 arrest, resulting in a July 26, 1991 conviction for possession of cocaine with intent to distribute for which Hagins was sentenced to four years' imprisonment with two years parole ineligibility.

b.  Defendant also has four New Jersey Municipal Court convictions:

(i) an August 20, 2005 arrest resulting in April 24, 2006 conviction for failure to turn controlled dangerous substance over to police;

(ii) a May 2, 1997 arrest, resulting in an April 10, 2003 conviction for violation of a local ordinance.

(iii) an October 25, 2000 arrest resulting in a June 21, 2005 conviction for possession of marijuana/hashish; and

(iv) an August 22, 1997 arrest, resulting in an August 23, 1997 conviction for possession of marijuana/hashish.

c.  On January 5, 2001, defendant was sentenced to five years imprisonment with two and one-half parole ineligibility period for a forgery conviction. This would have placed defendant under New Jersey state court supervision as of December 29, 2004, the day on which he threatened Alexander Panchenko with a loaded Glock. It would also have placed him on court supervision throughout the September 2004 through June 2005 period in which Hagins was trafficking in firearms with the Pennsylvania resident.

d.  The current felon in possession crime, as well as the as yet uncharged firearm trafficking crimes, were committed after Hagins had been arrested for, and while charges were pending against Hagins as a result of, the conduct resulting in his 2001 forgery conviction and his 2005 possession of marijuana/hashish conviction.

6. The defendant has a lack of community ties and employment. Defendant has no known legitimate ties to this District, although he has used this District to make straw purchases of firearms, and has threatened another motorist with a gun within this district.

7. Defendant has used six known aliases, suggesting that he is a substantial risk of flight.

8. Defendant's drug and gang related contacts, and his threat to a federal witness, establishes that there is "a serious risk that . . . [Hagins] will . . . threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness . . . ."

9. The strength and nature of the case against the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the Attorney General for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal; that the defendant be afforded reasonable opportunity for private consultation with counsel; and that, on order of a

Court of the United States, or on request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

BY THE COURT:

---

HONORABLE DAVID R. STRAWBRIDGE
*United States Magistrate Judge*

CERTIFICATE OF SERVICE

I certify that a copy of the Government's Motion for Pretrial Detention, and Proposed Order was served by hand delivery on the following defense counsel on November 2, 2006:

> Frank M. Spina II, Esquire
> 1800 JFK Boulevard
> Suite 1500
> Philadelphia, PA 19103

/s/ Paul G. Shapiro
Paul G. Shapiro
Assistant United States Attorney

DATE: November 3, 2006