IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO.  06-485 |
| | : | |
| SEAN HAGINS | : | |
| | : | |

<u>MEMORANDUM AND ORDER</u>

AND NOW, this   26th   day of February 2008, upon consideration of Defendant's

Motion to Suppress Tape Recorded or Other Electronic Surveillance Evidence (Doc. No. 36),

Government's Cross Motion to Admit Tape Recordings (Doc. No. 39), Government's

Supplemental Motion to Admit Evidence of Defendant's January 31, 2006 Drug Transaction

(Doc. No. 55) and Defendant's Response thereto (Doc. No. 87), Defendant's Motion for

Severance of Offenses (Doc. No. 85), Defendant's Motion to Suppress Evidence (Doc. No. 86),

Defendant's Motion to Dismiss Superseding Indictment (Doc. No. 88), Government's

Opposition to Defendant's Motions for Severance of Offenses, to Suppress Evidence, and to

Dismiss the Superceding Indictment (Doc. No. 95), Defendant's Motion to Dismiss Second

Superseding Indictment (Doc. No. 109), Defendant's Motion in Limine to Exclude Taped

Telephone Calls (Doc. No. 110), Government's Opposition to Defendant's Motions to Dismiss

the Second Superceding Indictment and to Preclude Evidence of Defendant's Recorded

Conversations (Doc. No. 113), Defendant's *pro se* Motion in Response to Outstanding Motions

(Doc. No. 54), and the testimony and argument presented at the February 4, 2008 evidentiary

hearing, it is hereby ORDERED that all of the Government's Motions are GRANTED and all of

1

Defendant's Motions are DENIED.  Further, upon consideration of the Government's Motion in Limine to Admit Evidence of His Status as a Felon (Doc. No. 40) and Defendant's Response thereto (Doc. No. 56), it is hereby ORDERED that the Government's Motion is GRANTED in part, and DENIED in part.

I.      Motion to Suppress Physical Evidence and Identification

The Court shall first address defendant's motion to suppress physical evidence and identification relating to his December 29, 2004 arrest.  We make the following findings of fact and conclusions of law.

On the afternoon of December 29, 2004, Alexander Panchenko called 9-1-1 while traveling northbound on Interstate 95 to report that another motorist had pointed a gun at him on the highway.  Panchenko described the other motorist as an African-American male with dreadlocks, driving a white Audi with New Jersey license plates near the Cottman Avenue exit. Information about this armed motorist was sent out over the police radio at 3:52 p.m.  Two minutes later, at 3:54 p.m., Officer James Cullen and two of his fellow officers spotted defendant's car — a white Audi with New Jersey plates — heading west on Cottman Avenue half a mile off the interstate exit.[1]  Noting that the driver matched the precise description of the suspect, Officer Cullen radioed for assistance and, together with several officers from a second police vehicle, pulled defendant's car over for investigation.  N.T. 2/4/08, 123-25.

---

[1] The police's computer-aided dispatch (CAD) report placed the time of the radio call at 3:52 p.m., and placed the time of Officer Cullen's call for backup — which immediately followed his initial glimpse of defendant's white Audi — at 3:54 p.m, just two minutes later. (See 2/4/08 Hr'g Gov't Ex. 1, N.T. 2/4/08, 10.)  The CAD report entries are further corroborated by Officer Cullen's testimony that he saw defendant's car "within three or four minutes" after receiving the radio call.  N.T. 2/4/08, 149.

As the officers approached the Audi and before any of them had a chance to address defendant, he immediately began repeating through the open driver's side window, "[It] was just a radio face, it was just a radio face." N.T. 2/4/08, 135. Reasonably interpreting these statements as defendant's confirmation that an object resembling a gun had been used, Officer Cullen "automatically realized that this [w]as probably the right vehicle, that there was some type of thing on — you know — the road." N.T. 2/4/08, 135. The officers then ordered defendant as well as his three passengers out of the car and proceeded to pat defendant down for weapons. Finding no gun on him, Officer Cullen's partner Officer Coolen, Jr. then surveyed defendant's car and recovered a Glock firearm from the driver's side. Shortly thereafter, Officer Kelly arrived on the scene with Panchenko, who positively identified defendant as the individual who had pointed the gun at him. N.T. 2/4/08, 126-128.[2]

As a result of this incident, defendant was charged with being a convicted felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and now seeks to preclude the government from introducing any related physical evidence or testimony at trial. Defendant contends that because the officers lacked probable cause to arrest him without a warrant, their subsequent search of his vehicle and Panchenko's "show-up" identification violated his Fourth Amendment rights. We disagree. It is well-established Supreme Court precedent that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable,

---

[2]Defendant testified at the February 4, 2008 hearing that it was not him who pointed the gun at Panchenko but his friend Haneef Nelson, who was seated in the front passenger seat of defendant's car. He also stated that the Glock was recovered from behind a panel on the passenger's side, not the driver's side. N.T. 2/4/08, 163, 179. Upon consideration of the substantive content of defendant's self-serving testimony and demeanor, however, the Court finds his testimony neither credible nor persuasive, and concludes as fact that the Glock was recovered from the driver's side of the vehicle in accordance with Officer Cullen's testimony.

3

articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 529 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). Significantly, this "reasonable suspicion" standard, which applies to vehicle stops, see United States v. Nelson, 284 F.3d 472, 481 (3d Cir. 2002), is "obviously less demanding than that for probable cause," and "requires a showing considerably less than preponderance of the evidence." United States v. Sokolow, 490 U.S. 1, 7 (1989); Wardlow, 529 U.S. at 123.

When evaluating reasonable suspicion, the Court must consider the totality of the circumstances to determine whether the officer had "some minimal level of objective justification for making the stop." Sokolow, 490 U.S. at 7 (citing INS v. Delgado, 466 U.S. 210, 217 (1984)). See Nelson, 284 F.3d at 475 (reiterating the Supreme Court's directive that courts should "afford to officers the opportunity to 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them'") (citing United States v. Arvizu, 534 U.S. 266, 273 (2002)). In the instant case, the make and color of the vehicle, the origin of the license plates, and the race and hairstyle of defendant exactly matched the police profile. Also, just two minutes after the radio bulletin was issued, defendant's car was spotted by Officer Cullen on Cottman Avenue immediately off the interstate exit where Panchenko had last reported seeing him. N.T. 2/4/08, 149-50. These facts, viewed together, make it plainly apparent that the investigatory stop was justified.

Indeed, the Court finds that this precisely matching description, when considered alongside defendant's own unprovoked statements to the police, supplied the officers with probable cause to arrest defendant and search his vehicle. Defendant's repeated admissions about a radio face plate — an object which could be seen to resemble a Glock — was reasonably

understood by Officer Cullen as a confession that defendant was the same individual who had threatened Panchenko. Moreover, the police were acting on information which indicated that the suspect had brandished a gun in broad daylight while traveling on a densely-populated highway. "Fourth Amendment jurisprudence has consistently accorded law enforcement officials greater latitude in exercising their duties in public places." <u>Florida v. White</u>, 526 U.S. 559, 565 (1999). Since an assessment of probable cause requires us to consider "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act," we find that probable cause existed here. <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1949).

Furthermore, the Supreme Court has acknowledged that "investigative detentions involving suspects in vehicles *are especially fraught with danger to police officers*." <u>Michigan v. Long</u> 463 U.S. 1032, 1048 (1983) (emphasis added). Thus, "[o]nce an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment." <u>Thorton v. United States</u>, 541 U.S. 615, 623 (2004). <u>See also</u> <u>New York v. Belton</u>, 453 U.S. 454, 460 (1981) ("[A]rticles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within the area into which an arrestee might reach in order to grab a weapon") (citing <u>Chimel v. California</u>, 395 U.S. 752, 763 (1969)).

That defendant was ordered out of the car during the search does not dilute our finding. The objective facts of this case fully warranted the officers' concern that defendant might regain control of his weapon immediately upon re-entering his vehicle, threatening their safety and the safety of the general public. As the Third Circuit stated:

> Probable cause deals with probabilities, not certainties. . . . [T]he

> Supreme Court defined the process of determining the existence of probable cause as "a practical, common sense decision whether, given all the circumstances . . ., there is a fair probability that contraband or evidence of a crime will be found in a particular place."

United States v. Rickus, 737 F.2d 360, 367 (3d Cir. 1984) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  As the facts of this case clearly justified defendant's arrest and the officers' search of his vehicle, and Panchenko's on-site identification flowed directly therefrom, defendant's motion to suppress the related evidence and testimony must be denied.[3]

II.     Motion for Severance of Offenses

Next, we turn to defendant's motion to sever.  Defendant seeks to have us separate out Count Seven of the indictment — the firearm possession charge stemming from the December 29, 2004 highway gun-brandishing incident — from Counts One through Six, which involve charges stemming from an alleged conspiracy between defendant and David Downs to straw purchase 45 firearms.[4]  First, he claims that joinder of Count Seven violates Rule 8(a) of the Federal Rules of Criminal Procedure since there lacks a "transactional nexus" between the gun-brandishing incident and the remaining six counts.  Second, he claims that even if joinder were

---

[3]While the facts here unmistakably support a finding of probable cause, the Court takes the time to point out that the gun is properly admissible regardless under the "inevitable discovery" exception to the exclusionary rule.  See Nix v. Williams, 467 U.S. 431 (1984).  Since the officers here "ha[d] grounds for impounding or otherwise taking custody of the vehicle," United States v. Morris, 179 Fed. Appx. 825, 827 (3d Cir. 2006), they would certainly have discovered the gun during a subsequent inventory search even had they not searched the car on-site.

[4]More specifically, Counts One through Six arise from a series of gun purchases allegedly made by David Downs — now a cooperating witness for the prosecution — on defendant's behalf, between September 2004 and May 2005.  The government claims that Downs straw purchased 45 guns at defendant's behest from various firearms licensees in the Eastern District of Pennsylvania, then gave them to defendant in exchange for cash and crack cocaine.

proper under Rule 8(a), it would be unfairly prejudicial to defendant under Rule 14.

We find both these arguments meritless. Rule 8(a) unequivocally states that joinder is appropriate to conserve judicial resources where, as here, the offenses charged "are of the same or similar character." See Fed. R. Crim. P. 8(a). Counts Four through Six of the second superceding indictment, which arise out of the straw purchase conspiracy, each consist of precisely the same charge as Count Seven: possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1). Because the charges themselves are identical, "the joinder issue under Rule 8(a) comes to a screeching halt" and the Court need not inquire further into whether the offenses are also transactionally related. United States v. Stevey, 2006 U.S. Dist. LEXIS 49558, *18 (W.D. Pa. July 20, 2006) (citing United States v. Jamal, 87 F.3d 913, 914 (7th Cir. 1996) ("the fact that the charges are the same is a sufficient basis for uniting them under the rule")). See also United States v. Brown, 2008 U.S. Dist. LEXIS 3228, *14 (E.D. Pa. Jan. 16, 2008).

Joinder is further proper under Rule 14. That rule provides that "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, . . . or provide any other relief that justice requires." Fed. R. Crim. P. 14(a) (emphasis added). Motions for severance rest in the sound discretion of the trial judge, who is best situated to weigh possible prejudice to the defendant against the public interest in judicial economy. United States v. Reicherter, 647 F.2d 397, 400 (3d Cir. 1981). Defendant therefore bears a heavy burden of demonstrating that joinder would impose a "clear and substantial prejudice that would result in a manifestly unfair trial." United States v. Eufrasio, 935 F.2d 553, 568 (3d Cir. 1991) (quoting Reicherter, 647 F.2d at 400).

Defendant argues that joinder of Count Seven with the remaining counts would be unduly

prejudicial because the jury will cumulate the evidence of the separate crimes and/or improperly infer defendant's criminal disposition on one count as evidence of his guilt on another. We disagree. The facts of this case are not so complex that a jury could not easily compartmentalize the discrete elements of each charge, and there is no reason to believe that they will "ha[ve] any difficulty in segregating and considering the relatively simple facts pertaining to the distinct counts." Reicherter, 647 F.2d at 400 ("Of primary concern . . . is 'whether the jury can reasonably be expected to compartmentalize the evidence'") (quoting United States v. DeLarosa, 450 F.2d 1057, 1065 (3d Cir. 1971)). And although the Count Seven allegations arising from the gun-brandishing episode might be potentially prejudicial, any such prejudice is certainly insufficient to outweigh the costs of an entirely separate trial, particularly since it may be readily cured by this Court's limiting instructions to the jury.[5]

Defendant also argues that joinder would be prejudicial because he "may be confounded in presenting different defenses to these distinct charges." (Def.'s Mot. for Severance of Offenses at 9.) Specifically, he argues that he may choose to testify in his own defense as to Count Seven, yet exercise his Fifth Amendment right as to the remaining counts. Under Third Circuit precedent, however, a defendant who argues that joinder compromises his right not to testify must meet a two-prong test: He must "make a convincing showing that he has both important testimony to give concerning one count *and* strong need to refrain from testifying on the other." Reicherter, 647 F.2d at 401 (emphasis added) (citing Baker v. United States, 401

---

[5]The Supreme Court has noted on multiple occasions "the almost invariable assumption of the law that jurors follow their instructions." Shannon v. United States, 512 U.S. 573, 585 (1994) (citing Richardson v. Marsh, 481 U.S. 200, 206 (1987)). We are therefore assured that a jury will properly follow our instruction to consider each of the incidents separately.

F.2d 958, 977 (D.C. Cir. 1968)).  To make such a showing, "it is essential that the defendant present enough information regarding the nature of the testimony he wishes to give on one count and his reasons for not wishing to testify on the other to satisfy the court that the claim of prejudice is genuine."  Id.

Here, defendant offers only a fleeting explanation for wanting to testify as to Count Seven, namely, that he wants to assert "that the police and the complaining witness (Panchenko) have fabricated aspects of the evidence."  (Def.'s Mot. for Severance of the Offenses at 9.)  This explanation falls far short of the standard under Reicherter.  Defendant supplies no theory for how this alleged fabrication was carried out between a civilian motorist, three narcotics officers, and at least two highway patrol officers, nor does he provide any illustration of how it materially relates to the Count Seven firearm possession charge.  Also, since the three other passengers in defendant's car were present during the investigatory stop, defendant is not the sole witness who can present testimony as to whatever theory he seeks to introduce.

Defendant offers an equally deficient explanation for not wanting to testify about Counts One through Six — that he would not want to be subject to cross-examination and impeachment by the government using his prior convictions.  As the Court reiterated during the February 4, 2008 hearing, this argument is not germane to the severance issue because defendant's prior convictions could be used to impeach him whether he testified as to one count or all seven.  N.T. 2/4/08, 250.  In a similar vein, because defendant is charged with being a *convicted felon* in possession of a firearm in relation to both his alleged straw purchases as well as the gun-brandishing incident, his prior convictions will come out at trial regardless of whether the counts are severed.

Accordingly, we cannot find that defendant has made a sufficient showing of unfair prejudice such that joinder would be improper. Defendant's motion is therefore denied. However, in the event he does choose to testify at trial exclusively as to Count Seven, the government should understand that the evidentiary rules limiting the scope of its cross-examination shall be strictly enforced. The Court will additionally issue a jury instruction on the limited nature of defendant's testimony.

III.    Motion to Dismiss Second Superceding Indictment

Defendant additionally moves to dismiss the second superceding indictment, claiming that the government engaged in outrageous conduct in violation of due process.[6] He bases his argument on several distinct allegations. First, he claims that the government acted vindictively in bringing additional charges relating to defendant's straw purchases in its superceding indictment after defendant refused to plead guilty to the single firearm possession charge arising from the December 29, 2004 gun-brandishing incident. He also claims that it was improper for the government to continue using David Downs as a cooperating witness after it learned he had tested positive for crack cocaine. Finally, he claims that the government abused the Grand Jury process by failing to sufficiently clarify two points: that the straw purchase of the Tec-9 was actually for the benefit of his brother, and that the same gun-brandishing charge previously brought against him in state court was dismissed for lack of evidence.

None of defendant's arguments are persuasive. As the government's response comprehensively outlined, the outrageous government conduct doctrine immunizing criminal

---

[6]Defendant had first moved to dismiss the Superceding Indictment prior to the government's issuance of its revised Second Superceding Indictment. (See Def.'s Mot. to Dismiss Superceding Indictment). The first motion is therefore denied as moot.

defendants from prosecution has been all but abandoned.  In United States v. Nolan-Cooper, the Third Circuit stated that "the viability of the [outrageous government conduct] doctrine is hanging by a thread."  155 F.3d 221, 230 (3d Cir. 1998).  See also United States v. Voigt, 89 F.3d 1050, 1065 (3d Cir. 1996) ("[T]he doctrine of outrageous government misconduct, although often invoked by defendants, is rarely applied by the courts") (additionally noting that the doctrine was applied by a federal appellate court only once in twenty years);[7] United States v. Santana, 6 F.3d 1, 4 (1st Cir. 1993) ("The banner of outrageous misconduct is often raised but seldom saluted. . . .  In practice, courts have rejected its application with almost monotonous regularity"); United States v. Mosley, 965 F.2d 906, 910 (10th Cir. 1992) ("The cases make it clear that this is an extraordinary defense reserved only for the most egregious circumstances.")

Unquestionably, defendant bears an extremely heavy burden which he has failed to meet.  The simple fact that additional charges were brought after defendant declined to plead or cooperate is far from sufficient to establish vindictiveness.  See United States v. Goodwin, 457 U.S. 368, 380 (1982) ("For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty . . . proves unfounded.")  Also, the fact that a cooperating witness for the government engaged in unlawful activity does not render his employ inherently outrageous, though it might detract from his credibility.  As the Nolan-Cooper Court emphasized, the outrageous government conduct defense "is not to be invoked each time

---

[7]Interestingly, according to the Court in United States v. Voigt, 89 F.3d 1050 (3d Cir. 1996), the single case in which the outrageous government conduct doctrine was applied was United States v. Twigg, 588 F.2d 373 (3d Cir. 1978), a case relied upon heavily by defendant in his brief.  (See Def.'s Mot. to Dismiss Second Superceding Indictment at 6.)

the government acts deceptively or participates in a crime that it is investigating." Id. at 231 (quoting Mosley, 965 F.2d at 910). See also United States v. Jannotti, 673 F.2d 578, 608 (3d Cir. 1982) (en banc) ("the majority of the Court has manifestly reserved for the constitutional defense *only the most intolerable government conduct*") (emphasis added). The same reasoning applies to defendant's claims that the government abused the grand jury process, which, as the Court characterized at the February 4, 2008 hearing, is more of a summary overview of the government's case than a line-by-line evidentiary presentation. N.T. 2/4/08 256-57. Moreover, the testimony of ATF Special Agent Thomas Pietrowicz refutes defendant's allegations that the government acted deceitfully to misrepresent its case. N.T. 2/4/08 60-70, 102-04.[8]

Defendant's other argument, specific to Counts Two and Three, is that the government lacks sufficient evidence to establish that the substance Downs received from defendant in exchange for guns was, in fact, crack cocaine. Aside from the fact that defendant's argument is entirely premature, the Court also disagrees with the merits of his argument, since the government may be able to meet its burden on this point even without having had the opportunity to chemically test the substance. And, to the extent that defendant is arguing that an exchange of drugs for guns does not constitute "possession of a firearm in furtherance of a drug trafficking crime" within the meaning of 18 U.S.C. § 924(c)(1), we find him incorrect given the plain language of the statute. See Watson v. United States, 128 S. Ct. 579, 585-86 (2007) (expressly reserving judgment on the issue of whether a recipient of guns in exchange for drugs falls within

---

[8]Special Agent Pietrowicz testified credibly that his grand jury testimony was based on the evidence as a whole, which he felt indicated that defendant was the one who had straw purchased the Tec-9 from David Downs before transferring its possession to his brother. "David Downs stated that Sean Hagins provided the money for the [Tec-9] firearm." N.T. 2/4/08, 104.

the amended language of § 924(c)(1)).  Defendant's motion is therefore denied.

IV.     Motions to Suppress/Admit Tape Recorded or Other Electronic Surveillance Evidence

        Defendant urges us to exclude certain tape recorded telephone and in-person

conversations between defendant and his alleged co-conspirator, David Downs.  He first cites

United States v. Starks, 515 F.2d 112 (3d Cir. 1975), apparently arguing that the tape recordings

are insufficiently audible, and therefore insufficiently authentic, to render them admissible at

trial.  (See Def.'s First Mot. to Suppress Tape Recorded or other Electronic Surveillance

Evidence.)  This Court disagrees.  After reviewing the tapes *in camera* and finding them wholly

audible, we exercise our discretion in ruling that they are properly admissible.  Moreover, as the

government stated in its cross-motion to admit the tapes, at this preliminary stage the recordings

— competently recorded by ATF field operatives and obtained with the express consent of

Downs — sufficiently meet the Third Circuit's "slight" burden of proof for authentication.

McQueeney v. Wilmington Trust Co., 779 F.2d 916, 928 (3d Cir. 1985).  "[T]here need only be a

*prima facie* showing, to the court, of authenticity . . . .  [I]t is the jury who will ultimately

determine the authenticity of the evidence, not the court."  United States v. Goichman, 547 F.2d

778, 784 (3d Cir. 1976).

        Alternatively, defendant submits that the tapes should be excluded pursuant to Fed. R.

Evid. 401 and 403 because they lack relevance to the issues in the case, and/or because even if

relevant, their probative value would be "substantially outweighed" by the danger of unfair

prejudice.  (See Def.'s Mot. In Limine to Exclude Taped Telephone Conversations, Nextel Direct

Connect Conversations, and Body Wires.)  First, we point out that the contents of the tapes fall

squarely within the definition of "relevant evidence," defined in the Federal Rules as "evidence

having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.  Though the tapes were recorded from January 31, 2006 to February 9, 2006 after the dates of the alleged purchases, they clearly reference the straw purchases of a TEC-9 and Sig Sauer firearm, the possession of which defendant is specifically charged in Counts Five and Six in the indictment.  Also, since the tapes consist of conversations between defendant and the very co-conspirator upon which several of the charges are based, they speak directly to the relevant issues of defendant's intent as well as the nature of his longstanding relationship with Downs.

Furthermore, this Court does not find the tapes to present any unfair prejudice which would preclude their admission under Fed. R. Evid. 403.  The contents of the tapes — such as discussions of defendant's past gun purchases as presented in his own words — are highly probative of his guilt and undoubtedly unfavorable to defendant's case.  However, the Third Circuit has cautioned against adoption of a "sweeping definition [of unfair prejudice which] would include any evidence suggesting guilt," as such an interpretation would broaden the scope of Rule 403 beyond all practical means.  See United States v. Cross, 308 F.3d 308, 324 n. 23 (3d Cir. 2002) (citing United States v. Blyden, 964 F.2d 1375, 1378 (3d Cir. 1992)).  "Rather, the focus must be on unfairness in the sense that the proponent would secure an advantage that results from the likelihood the evidence would persuade by *illegitimate* means." Blyden, 964 F.2d at 1378 (emphasis added).

This Court can identify nothing illegitimate about the government's proposed use of the recordings which might give rise to unfair prejudice.  Defendant claims that a jury hearing the tapes will be improperly influenced by evidence of his "continued association with a 'drug

14

addict' (Downs)." (See Def.'s Mot. at 6.)  But under Third Circuit standards this point can hardly sustain a finding that any prejudicial effect therefrom would "substantially outweigh" the tapes' probative value.  In fact, "when evidence is highly probative, even a large risk of unfair prejudice may be tolerable." Cross, 308 F.3d at 323.  Moreover, the style of defendant and Downs' interactions, no less than the interactions themselves, speaks directly to the nature of their conspiratorial relationship, the evidence of which the government "has broad latitude" to introduce at trial. See id. at 324 ("Rule 404(b) evidence is especially probative when the charged offense involves conspiracy").  Defendant's Rule 403 argument therefore fails.

Finally, defendant argues that the recordings should be excluded under Fed. R. Evid. 404(b), which prohibits the admission of evidence used solely to prove a defendant's bad character or propensity to commit crimes. See Fed. R. Evid. 404(b) ("Evidence of other . . . acts is not admissible to prove the character of a person in order to show action in conformity therewith.")  Two factors must be considered when undertaking a Rule 404(b) analysis: first, whether the evidence is "logically relevant," under Rules 404(b) and 402, to any issue other than defendant's propensity; and second, whether under Rule 403 the probative value of the evidence outweighs its prejudicial effect. United States v. Himelwright, 42 F.3d 777, 781 (3d Cir. 1994) (noting that a trial court "has significant leeway in making both determinations") (citing United States v. Sampson, 980 F.2d 883, 886 (3d Cir. 1992)).  One must keep in mind, however, that "the drafters [of Rule 404(b)] . . . intended to emphasize admissibility of 'other crime' evidence." United States v. Scarfo, 850 F.2d 1015, 1019 (3d Cir. 1988) (internal quotation marks omitted).

The tapes here contain clear evidence of numerous issues beyond defendant's propensity, such as his past straw purchases of the TEC-9 and Sig Sauer, as well as his intent, opportunity,

and preparation for conducting the purchases through his co-conspirator Downs. They make direct reference to defendant's knowledge of the methods necessary to conceal the origins of the illegally-obtained weapons. The tapes also contain evidence of the common plan between himself and Downs, by way of the tone and manner of their interactions, which illustrates the longstanding nature of their drugs-in-exchange-for-guns relationship. Finally, as analyzed, supra, any prejudicial effect the tapes might have is insufficient to outweigh its strong probative value under Rule 403. Therefore, consistent with the well-established principle that "Rule 404(b) is a rule of inclusion rather than exclusion," we find the tapes properly admissible at trial.[9] United States v. Kellogg, 510 F.3d 188, 197 (3d Cir. 2007) (citing United States v. Givan, 320 F.3d 452, 460 (3d Cir. 2003)).[10]

V.      Motion to Admit Evidence of Defendant's January 31, 2006 Drug Transaction

Additionally with respect to the tapes, the government seeks to admit the portion of recordings evidencing defendant's contemporaneous sale of $100 of crack cocaine to Downs, which occurred on January 31, 2006. It argues that, although the present indictment does not charge defendant with this particular drug transaction, it is nevertheless admissible under Fed. R. Evid. 404(b) since it is highly relevant to the charged offenses and is not unduly prejudicial.

---

[9]The Court is also prepared to give a limiting instruction to the jury in order to eliminate the 'undue tendency . . . suggesting a decision on an improper basis. . . ." See Fed. R. Evid. 403, Advisory Committee's Note.

[10]Defendant also filed a pro se motion addressing the admissibility of the tape recordings. (See Def.'s pro se Mot. in Resp. to Outstanding Motions.) However, the Third Circuit has stated that "[i]ssues that counseled parties attempt to raise pro se need not be considered except on a direct appeal in which counsel has filed an Anders brief." United States v. Essig, 10 F.3d 968, 973 (3d Cir. 1993). Such a rule "is intended to avoid conflicting arguments and to foster judicial efficiency." Id. See also Hall v. Dorsey, 534 F. Supp. 507, 508 (E.D. Pa. 1982) ("There is no right to 'hybrid' representation — simultaneously pro se and by counsel.").

16

Applying the same two-pronged 404(b) analysis above, <u>supra</u>, this Court agrees that the uncharged drug transaction is properly admissible.

Once again we reiterate the Third Circuit's preference for admitting 404(b) evidence. In <u>United States v. Johnson</u>, the Court of Appeals stated, "We favor the admission of such evidence 'if relevant for any other purpose than to show a mere propensity or disposition on the part of the defendant to commit the crime.'" 199 F.3d 123, 128 (3d Cir. 1999) (quoting <u>United States v. Long</u>, 574 F.2d 761, 766 (3d Cir. 1978)). The Court went on to quote the Eighth Circuit's holding in <u>United States v. Dennis</u>, 625 F.2d 782, 797 (8th Cir. 1980): "In weighing the probative value of evidence against the dangers . . . in Rule 403, *the general rule is that the balance should be struck in favor of admission.*" <u>Johnson</u>, 199 F.3d at 128 (emphasis added).

The evidence of the January 31, 2006 drug transaction is highly probative of the charged offenses. First, defendant's sale of crack cocaine to Downs was itself the purported purpose of their in-person meeting, and is thus necessary to provide context for their recorded conversation. Second, their mutual comfort level and familiarity in conducting the drug sale, as evidenced by the style of their interactions and their term usage, speaks volumes about their deep-rooted conspiratorial relationship and the level of trust they shared in the context of illegal undertakings. See <u>United States v. Butch</u>, 256 F.3d 171, 176 (3d Cir. 2001) ("testimony of a . . . co-conspirator . . . could be considered relevant to provide necessary background information, to show an ongoing relationship between [the defendant and a co-conspirator], and to help the jury understand the co-conspirator's role in the scheme") (citing <u>United States v. Simmons</u>, 679 F.2d 1042, 1050 (3d Cir. 1982)). Third, the contents of the tape recording will be crucial to corroborating Downs' expected testimony about his past dealings with defendant. See <u>Scarfo</u>,

850 F.2d at 1020 (holding that testimony with a "damaging" impact to defendant "does not require exclusion . . . where the evidence was essential in the government's effort to establish the credibility of its disreputable, yet indispensible, witnesses").

Furthermore, while the Court recognizes that evidence of this drug transaction will be somewhat prejudicial to defendant's case, it is not so *unfairly* prejudicial under Rule 403 such that exclusion would be warranted. See Section IV, supra. "In a conspiracy prosecution, the government is usually allowed considerable leeway in offering evidence of other offenses to inform the jury of the background of the conspiracy charged, . . . and to help explain to the jury how the illegal relationship between the participants in the crime developed." Cross, 308 F.3d at 324 n.24 (citing United States v. Mathis, 216 F.3d 18, 26 (D.C. Cir. 2000)).  There is no reason to believe that this single drug transaction would so affect a jury as to suggest decision on improper grounds.  Indeed, the Third Circuit has on multiple occasions permitted the government to present evidence of uncharged offenses involving far more prejudicial circumstances. See, e.g., Scarfo, 850 F.2d 1015 (affirming the lower court's admission of organized crime defendant's prior order to have a judge murdered); Butch, 256 F.3d 171 (same as to defendant's prior drug thefts); United States v. Vega, 285 F.3d 256 (3d Cir. 2002) (same as to defendant's prior participation in a drug conspiracy).  As such, the Court concludes that an explanatory limiting instruction to the jury will suffice to ensure that the evidence is considered only for the proper means.

VI.     Motion to Admit Evidence of Defendant's Status as a Felon

Lastly we consider the government's motion to admit defendant's prior convictions, also

brought under Rule 404(b).[11]  The government seeks to introduce this evidence not for

impeachment purposes under Fed. R. Evid. 609, but rather as intrinsic evidence of defendant's

felon-in-possession charges, 18 U.S.C. § 922(g)(1).[12]  It also argues that this evidence is

admissible to show defendant's motive in the conspiracy-related charges, based on the theory that

defendant entered into a straw-purchasing conspiratorial relationship with Downs because he

knew he could not otherwise purchase firearms.

First, to the extent that the government seeks to introduce defendant's prior convictions

for any non-intrinsic purpose under 404(b), e.g., motive, its motion is denied.  Second, with

respect to the government's attempts to admit the convictions as intrinsic evidence of the §

922(g)(1) charges, we point out that defendant does not dispute his status as a convicted felon

during the relevant time frame.  However, despite both indicating their willingness to do so, the

parties have failed to reach a stipulation which would remove this uncontested issue from the

case, as is the typical practice.  We are absolutely befuddled at their inability to do so.

It is well-established that entering a stipulation and bifurcating the case is the most

appropriate manner of establishing the "convicted felon" element of a § 922(g)(1) charge while

still comporting with the principles of Rule 404(b).  See Old Chief v. United States, 519 U.S.

172, 191 (1997) (in establishing defendant's felony-convict status, "there is no cognizable

difference between the evidentiary significance of an admission and . . . the official record [of

---

[11]Defendant's criminal history includes four New Jersey felony convictions: two cocaine-related convictions, one forgery conviction, and one conviction for obstruction of justice.

[12]Generally this Court would bifurcate a case involving felon-in-possession charges so that the jury would learn of a defendant's status as a felon only after making a finding that he "possessed" a firearm within the meaning of 18 U.S.C. § 922(g)(1).

19

prior convictions]. . . . [T]he functions of the competing evidence are distinguishable only by the risk inherent in the one and wholly absent from the other"); United States v. Jemal, 26 F.3d 1267, 1274 (3d Cir. 1994) ("[A]lthough we leave the door open, we believe that district courts should generally deem prior bad acts evidence inadmissible to prove an issue that the defendant makes clear he is not contesting").

The Court therefore fully expects the parties to reach an appropriate stipulation prior to the trial in this matter.  Should they fail to enter a stipulation, both parties would be directed to appear before the Court to explain their inability to abide by their repeated assurances to do so.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO.  06-485 |
| | : | |
| | : | |
| SEAN HAGINS | : | |
| | : | |
| | : | |

AND NOW, this   26th    day of February 2008, it is hereby ORDERED as

follows:

1. Defendant's Motion to Suppress Tape Recorded or Other Electronic
Surveillance Evidence (Doc. No. 36) is DENIED.
2. Defendant's Motion for Severance of Offenses (Doc. No. 85) is DENIED.
3. Defendant's Motion to Suppress Evidence (Doc. No. 86) is DENIED.
4. Defendant's Motion to Dismiss Superseding Indictment (Doc. No. 88) is
DENIED as moot.
5. Defendant's Motion to Dismiss Second Superseding Indictment (Doc. No. 109)
is DENIED.
6. Defendant's Motion in Limine to Exclude Taped Telephone Calls (Doc. No.
110) is DENIED.
7. Defendant's *pro se* Motion in Response to Outstanding Motions (Doc. No. 54)
is DENIED.
8. Government's Cross Motion to Admit Tape Recordings (Doc. No. 39) is
GRANTED.
9. Government's Supplemental Motion to Admit Evidence of Defendant's January
31, 2006 Drug Transaction (Doc. No. 55) is GRANTED.
10. Government's Motion in Limine to Admit Evidence of His Status as a Felon
(Doc. No. 40) is GRANTED in part, and DENIED in part.

BY THE COURT:

Legrome D. Davis, J.