**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No. 06-485** |
| | : | |
| **SEAN L. HAGINS** | : | **Civil No. 13-5665** |
| | : | |

**GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION**
**TO TOLL THE TIME PERIOD FOR FILING HIS 2255 PETITION**

The United States of America, by and through its attorneys, Zane David Memeger, United States Attorney for the Eastern District of Pennsylvania, and Paul Shapiro, Assistant United States Attorney, submits this opposition to the defendant's motion for relief under 28 U.S.C. § 2255.

**I.** **BACKGROUND**

**A.** **Procedural History**

On September 14, 2006, a grand jury in the Eastern District of Pennsylvania returned a one-count indictment charging defendant/petitioner Sean L. Hagins with possessing a firearm as a convicted felon. On December 16, 2006, the grand jury returned a seven-count Superseding Indictment that charged Hagins with: (i) conspiring to straw purchase in excess of 45 firearms, in violation of 18 U.S.C. § 371; (ii) two counts of using a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C.§ 924(c)(1); and (iii) four counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C.§ 922(g)(1). On December 19, 2007, the grand jury returned a Second Superseding Indictment, which altered the language of the two 18 U.S.C. § 924(c) counts in accordance with Watson v. United States, 552 U.S. 74 (2007), but otherwise left the counts and charges intact.

The case proceeded to trial on February 28, 2008. On March 7, 2008, the jury returned a verdict finding Hagins guilty of the straw purchase conspiracy (Count One); and all four felon-in-possession charges (Counts Four through Seven). The jury returned a verdict of not guilty on the 924(c) counts (Counts Two and Three).

On March 8, 2008, Hagins moved for a judgment of acquittal and/or for a new trial. On August 8, 2009, and September 11, 2009, he filed supplemental post-trial motions.

On September 14, 2009, this Court held a testimonial hearing followed by argument by counsel, and denied all of Hagins' motions. On October 2, 2009, the Court issued a written opinion supplementing its explanation for its denial of the defendant's amended supplemental motion premised on the Supreme Court's decision in Arizona v. Gant, 556 U.S. 332 (2009). Id. at 33.

On the same date that it held the testimonial hearing on Hagins' post-trial motions, this Court also held a sentencing hearing. The Court found that Hagins was properly categorized at offense level 35, criminal history category VI, with a resulting Sentencing Guidelines range of 292-365 months. After argument from counsel, and an allocution by Hagins, the court chose a within-Guidelines sentence of 360 months' imprisonment, along with three years' supervised release, a fine of $10,000, and a $500 special assessment. Id. at 1686-1704.

On September 23, 2009, Hagins filed a timely appeal from the judgment of conviction and sentence. His convictions and sentence were affirmed by the United States Court of Appeals for the Third Circuit in an unpublished opinion on or about November 18, 2011. United States v. Hagins, 452 F. App'x. 141 (3d Cir. 2011) (not precedential). He sought certiorari in the Supreme Court, which was denied on or about October 1, 2012.

On September 27, 2013, the defendant filed a motion for habeas relief pursuant to 28

U.S.C. § 2255 (Docket No. 201). On October 7, 2013, Hagins filed a motion to strike/withdraw

his Section 2255 Motion as unauthorized (Docket No. 203).

By Order dated October 15, 2013, this Court granted-in-part and denied-in-part Hagins'

motion, directing that Hagins' memorandum of law, but not his timely filed petition, be

withdrawn (Docket No. 204). The Court also granted Hagins until December 2, 2013 to file an

amended Section 2255 Motion on a Court-approved form.

On December 3, 2013, Hagins filed an amended Section 2255 Motion (Docket No. 205).

The United States now submits this opposition.

**B.      Statement of Facts**

*1.      The I-95 Gun Threat Incident*

On December 29, 2004, Alexander Panchenko was traveling northbound on I-95 in

Philadelphia when a white Audi with New Jersey plates repeatedly cut in front of him.

Panchenko changed lanes in an effort to avoid the Audi. When traffic became congested and

slowed almost to a stop in the area of Bridge Street, the Audi drove up in the breakdown lane,

passed Panchenko's car, and stopped. The driver, defendant Sean Hagins, rolled down his

window and pointed a handgun, which appeared to be a Glock, out of his window. Panchenko

again tried to get away, but the Audi continued to follow him.

Just before the Cottman Avenue exit, Panchenko called 9-1-1 on his cell phone.

Panchenko described the gunman as a black male with dreadlocks, and described the car as a

white Audi with New Jersey plates. Hagins continued to follow Panchenko, and then got off the

highway at the Cottman Avenue exit.

When Panchenko saw a police car near the Academy Road exit, he pulled over to again report what had happened. The incident had already been broadcast over police radio. Shortly thereafter the Audi was stopped by the police.

As these events were taking place, Philadelphia Police Officers James Cullen, James Coolen, Jr., and James Coolen, Sr. were working on an unrelated investigation when they heard the radio report about the white Audi whose driver had brandished a weapon. They drove toward Cottman Avenue. When they reached Cottman Avenue, the officers saw the Audi, which was stopped by a marked unit at Cottman Avenue and Hawthorne Street.

Once the car was stopped, the officers approached the Audi. Before they had an opportunity to say anything, Hagins repeatedly insisted that he had only pointed the face plate of his radio at the other driver.

The occupants of the Audi were removed and Coolen, Jr. searched the passenger compartment and, after a few minutes, found a Glock. It had been tucked into a space between the center console and floor in the driver's foot well. Panchenko was brought to the scene of the stop and positively identified Hagins as the man who had pointed a gun at him. Hagins was arrested.

## 2. *The Straw Purchase Conspiracy*

As a convicted felon, Hagins was prohibited from buying firearms himself. However, starting several months before he threatened Panchenko on I-95, Hagins made use of an individual named David Downs to purchase firearms on Hagins' behalf. In a nine-month period, Hagins used Downs to straw purchase about 50 firearms. In return, Hagins provided Downs, an addict, with crack cocaine.

As part of the straw purchase conspiracy, Hagins gave Downs instructions about the firearms he wished Downs to purchase, as well as money to make the purchases. Downs bought the designated firearms from federal firearms licensees in the Eastern District of Pennsylvania, and turned the guns over to Hagins in return for cash and crack cocaine. In each case, Downs filled out federal firearms purchase forms falsely certifying that Downs was the actual purchaser when, in fact, the actual purchaser was Hagins.

Once he obtained the weapons from Downs, Hagins sold the guns to other criminals in Trenton, New Jersey. Hagins' firearms were in great demand inasmuch as there was, at that time, a violent gang war taking place in the streets of Trenton. A number of the firearms straw purchased by Hagins were recovered by Trenton police officers, some at crime scenes, and some with obliterated serial numbers.

One particular gun recovered by the Trenton Police, a Tec-9, was remarkable in its appearance. An assault-type weapon, this gun had an extended magazine, a suppressor, and a unique laser sight. Because of its fearsome appearance, Downs specifically recalled purchasing the Tec-9 at Hagins' request and handing it to Hagins, who immediately turned it over to a man whom Hagins identified as Hagins' "brother."

Another witness, Gilbert Nickens, also recalled the Tec-9. Like Hagins, Nickens was a Trenton-area felon who sold illegal firearms on the black market. Nickens and Hagins occasionally bought and sold weapons from each other. On one occasion when Hagins was showing Nickens a handgun that he wished to sell, Nickens saw the Tec-9 in the trunk of Hagins' car. When Nickens inquired about purchasing the Tec-9, Hagins told him that the gun belonged to Hagins' brother. Eventually, however, Hagins reported that his brother was willing to sell it,

and Nickens paid Hagins $2,500 for the Tec-9.  That gun was eventually seized by the Trenton Police from a car located on Wood Street.

### 3.    *The Investigation.*

Alerted to Downs' many firearm purchases, federal agents confronted him with suspicions that he had been engaged in straw purchases.  Downs admitted that he had done so, and identified Hagins as the person for whom he had made the vast majority of his purchases. Downs agreed to cooperate with the agents.

Between January 31, 2006, and February 9, 2006, Hagins and Downs engaged in a series of recorded and monitored telephone conversations and in person meetings.  Downs purported to be interested in buying drugs from Hagins.  The men discussed the narcotics sale and, during one of the meetings, Hagins sold $100 worth of crack cocaine to Downs.  In this context, Hagins discussed with Downs their earlier gun purchasing relationship, and the two men agreed that Downs would make more purchases for Hagins.  The two men also discussed particular guns that Downs had purchased for Hagins in the past (including the Tec-9) as well as particular gun shops from which Downs had made the purchases.

For example, during one of the recorded conversations the two men discussed Downs' earlier firearms purchases for Hagins, both in general and in particular:

Hagins:     Hey, man a bunch of those things keep turning up, man, you can't tell me nobody got back to you.

Downs:      No, they got back to me about one.

Hagins:     Which one?

Downs:      That Kel Tec.  And they're holding it for evidence.

Shortly after this discussion, Hagins asked Downs whether he was still available to make more gun purchases:

Hagins:        You ever try to go get anything after you and me did anything?

Downs:        Not yet, but my permit is still active and stuff so I can go.

Hagins:        Definitely good?

Downs:        Definitely good.

Hagins:        Yeah.  Are you going to get some more?

Downs:        Tell me when.

Id. at 59-60.

Shortly after that general discussion, Hagins turned the conversation toward the Tec-9:

Hagins:        This shit is scaring me, man, all of a sudden that tech nine, my brother, you got for my brother, I seen in the paper that one was retrieved with a fucking silencer on it, I know it had a silencer on it, not a silencer, but a muffler, but still they call it a silencer.

Downs:        It's a flame suppressor or something like that.

Hagins:        Yeah.  Yeah, turned up on Wood Street, and my brother, I thought he was going to keep it, he turned around and sold it for 1400.  And I called the guy he sold it to to ask him if he still had it he said no, I got rid of it, and my brother was supposed to take the number off that, and I'm not, I'm almost certain he didn't, but I don't know if that's the one that turned up. They also found another one on somebody else that turned up, a tech nine, a -- a -- what the fuck, an intertech.

In the middle of their gun-related conversation, Hagins sold the $100 worth of crack cocaine to Downs.

### 4.  *The Trial and Post-Trial Proceedings.*

The defendant filed pretrial motions, including motions to suppress, to sever, to dismiss the indictment, and to exclude his recorded conversations with Downs.  The government filed motions to admit at trial the subject matter of Hagins' undercover interactions with Downs, including the sale of crack cocaine, under Rule 404(b).  This Court held an evidentiary hearing at which the government called two Philadelphia police officers, an employee from the Philadelphia Police radio room, and the ATF case agent.  Hagins testified in support of his own motions, and also called the case agent to testify.  Counsel also argued the issues.

This Court denied the defendant's motions to suppress evidence, sever counts, dismiss the indictment, and preclude admission of the tape recordings.  The court granted the government's motions to admit the tape recordings and to admit evidence of the drug transaction between Hagins and Downs.  This Court documented its reasoning on the record and in a comprehensive memorandum opinion dated February 26, 2008.

The government had provided the defendant with discovery, including information about a witness who was cooperating with the government.  Shortly before trial, the government learned that Hagins had mailed government investigative reports about the cooperating witness to his brother, and had instructed his brother to make copies of this material, to combine it with a photograph of the witness, and to distribute it to establishments in the community.  Hagins' brother ultimately admitted that Hagins had sent him the discovery materials and had instructed him to distribute them.

Hagins' trial took place between February 28, 2008, and March 6, 2008. On March 6, 2008, the jury returned a verdict finding Hagins guilty of conspiring to straw purchase firearms as charged in Count One, and guilty of each of the felon-in-possession charges of Counts Four through Seven. The jury found Hagins not guilty of Counts Two and Three, the Section 924(c) counts.

Hagins filed a series of post-trial motions. In addition to reiterating his pretrial motions, Hagins claimed that the evidence did not support the jury's verdict and that his counsel had provided ineffective assistance. This Court conducted an evidentiary hearing at which Hagins was represented by new counsel. At the hearing, Hagins testified and also adduced the testimony of his brother and a stipulation detailing the substance of his wife's contemplated testimony.

In response, the government called Hagins' trial counsel, who explained the reasons for the various actions challenged by Hagins, and testified that his decisions were made with Hagins' agreement after consultation between lawyer and client. This Court made findings on the record and additional findings in a memorandum opinion. The court found that Hagins' trial counsel had provided truthful testimony, that counsel had fully consulted with Hagins, and that there were strategically sound reasons for counsel's challenged decisions. Indeed, based on its own observations, the court found that Hagins' trial lawyer was "very good technically and strategically," and that he was a "skillful, skillful lawyer." This Court found that Hagins had failed to establish that his counsel was in any way deficient or that he had suffered any prejudice

II.    **ARGUMENT**

    A.    **Hagins' Motion Under Section 2255 Should Be Denied.**

    Hagins has filed a 2255 motion in which he alleges that his trial counsel was ineffective for failing to investigate and call as a witness at trial one of the criminals who was caught in possession of one of the weapons purchased by David Downs. In addition, Hagins claims that his sentencing counsel was ineffective for failing to challenge six aspects of the calculation of Hagins' Sentencing Guidelines range. All seven of these claims fail on the existing record, either as a matter of law or as a matter of fact.[1]

    To establish ineffective assistance of counsel, a defendant must show both deficient performance by counsel and prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance is only established if a petitioner can show that his counsel's efforts "fell below an objective standard of reasonableness" under the standard set by "prevailing professional norms." Id. at 688. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." Harrington v. Richter, ___ U.S. ____, 131 S. Ct. 770, 787 (2011) (quoting Strickland, 466 U.S. at 687-89).

    To demonstrate prejudice, Strickland establishes the following demanding standard: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a

---

1    Hagins' motion under Section 2255 appears on the docket as Document No. 205. That Document includes both Hagins' actual petition and his accompanying brief and appendix. For convenience and simplicity, the government cites to the pages numbers supplied by the Court's docketing system. Those numbers, which appear in the legend at the top of the filed documents,

probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also McNeil v. Cuyler, 782 F.2d 443, 447-49 (3d Cir. 1986); United States v. Fulford, 825 F.2d 3, 8 (3d Cir. 1987). Ultimately, the burden is on a defendant to show that counsel's performance resulted in "a breakdown in the adversary process that renders the result unreliable." McNeil, 782 F.2d at 448, quoting Strickland, 466 U.S. at 696. Here, Hagins' claims fail under the Strickland test, and therefore his motion for relief should be denied.

**B.     Hagins' Ineffective Assistance of Trial Counsel Claim
Fails Both as a Matter of Law and as a Matter of Fact.**

Hagins raised in the district court, as part of his post-trial motions, a claim that his trial counsel had been ineffective. Indeed, this Court appointed new counsel for the purposes of post-trial motions and sentencing for the express purpose of permitting Hagins to assert such a claim. With the assistance of that new counsel, Hagins not only asserted ineffectiveness generally, but in fact raised the precise claim that he now raises in this Section 2255 motion.

At the post-trial hearing, one of Hagins' primary complaints was that his trial counsel had failed to interview and call as witnesses the several individuals who had been arrested in possession of weapons that Hagins had straw purchased from Downs. Among these, Hagins raised by name the case of Anthony Gary, the subject of his present Section 2255 motion:

> Q.     What was your understanding of what Mr. Engle would do regarding individuals, who were arrested with firearms that were purchased by David Downs?
>
> A.     He would interview them and try to establish the chain of custody and to see if they could become a potential witness for the defense.
>
>         For one particular reason, it was – this one particular person, Gary Anthony, who has no ties to Trenton whatsoever, he was arrested in New York with the – with

---

run from page 1 through page 49.

the firearm from David Downs.

> When he was arrested with the gun he said, I bought the gun in PA. off a crackhead. And not only does he live in PA and he said he bought it off a crackhead, but David Downs had an address thirty – 33 Disk Lane in Levittown, Pennsylvania – this individual lives in Levittown also – Pennsylvania.

> And this person could have said – could have pointed out Downs as the one who actually gave him the gun, exactly, matching my theory of what – my knowledge that – of what he really does, you know what I mean? And not me, it's –

Tr. (9-14-09) at 60-61.[2]

At the conclusion of the testimony, this Court denied the claim of ineffectiveness of Hagins' trial counsel, finding that Mr. Engle had not made errors and, also, that Hagins' had not established prejudice. Id. at 170-71. The Third Circuit affirmed both aspects of this Court's rejection of Hagins' ineffectiveness claim: "the District Court correctly concluded that none of the alleged errors 'begin[s] to approach error as contemplated by Strickland.' . . . . As such, we find that Hagins' ineffective-assistance claim fails on both prongs." United States v. Hagins, 452 F. App'x. 141, 150 (3d Cir. 2011).

As a general matter, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." Massaro v. United States, 538 U.S. 500, 504 (2003), citing United States v. Frady, 456 U.S. 152, 167-168 (1982). There is, however, an exception to this procedural default rule under which defendants need not present ineffective assistance of counsel claims on direct appeal, but may reserve them for a later proceeding under Section 2255. Id. at 504, 509. This rule directs the initial litigation of ineffective assistance claims to the district court, which is "the forum best suited to developing

---

the facts necessary to determining the adequacy of representation during an entire trial." Id. at 505.

It is, however, well settled that a habeas petitioner cannot re-litigate an issue that has been finally determined on direct appeal. Gov't of the Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985); see also White v. United States, 371 F.3d 900, 902 (7th Cir. 2004) (invoking "doctrine of law of the case" and holding that "the courts, including our court, forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal"). Indeed, Massaro, did not purport to alter this longstanding rule. See Massaro, 538 U.S. at 508-09. Here, where Hagins has once litigated and lost his claim that his trial lawyer provided ineffective assistance by failing to investigate and adduce the testimony of criminals arrested in possession of guns straw purchased by Downs, he cannot again raise that same issue in the guise of a Section 2255 petition. Thus, his ineffectiveness of counsel claim fails as a matter of law.

Even setting aside the fact that Hagins' single ineffectiveness argument directed at his trial counsel is foreclosed as a matter of issue preclusion, it would fail on the merits for the precise reasons identified by this Court at the post-trial motions hearing. First, it was appropriately strategic for Mr. Engle to avoid the testimony of persons who had ended up with weapons straw purchased by Downs. Even if they could be located, it was doubtful that such persons would waive their Fifth Amendment rights and testify. Even if they did testify, that testimony would not necessarily be of any value. A person arrested with a gun bought by Downs might have bought it from a person who bought it from Hagins. Thus, even if they identified their seller as someone other than Hagins, it would not be exculpatory. Only if the arrestee

_____

transcript of proceedings on September 14, 2009.

testified that they bought it directly from Downs would it be of any possible value. Even then, however, it still might favor the government. At trial Hagins' defense was that he merely brokered gun sales. Thus, even a person who bought their gun directly from Downs might well identify Hagins as a participant in the transaction, thereby strengthening the government's case.

Compared with these potential problems that might be uncovered by locating and subpoenaing witnesses such as Gary, the possible advantages for the defense were slight or non-existent. As Mr. Engle pointed out, Downs had admitted that he had sold weapons to purchasers other than Hagins. Tr. (9-14-09) at 123. This fact did not to undermine the evidence that Downs and Hagins had engaged in a straw purchase conspiracy that involved many dozens of weapons. Indeed, the independent evidence, such as their tape recorded conversations, confirmed that Hagins and Downs had had a substantial relationship in which Downs straw purchased weapons on Hagins' behalf. Thus, at best, the testimony of Anthony Gary would have reduced the number of weapons attributable to Hagins by one. Given, however, that there were already more than fifty, such a reduction would have been of less than marginal benefit and, contrary to Hagins' claim, would not have significantly impeached Downs' testimony. Given these considerations, as this Court found, Engle made a wise strategic decision in foregoing any effort to contact arrestees.

At the same time, and for the reasons identified at the post-trial hearing, Hagins cannot show that he was prejudiced. To prove prejudice, Hagins bears the burden of showing the substance of the testimony that his counsel's alleged ineffectiveness cost him. He has offered only speculation that Mr. Gary would identify Downs as his seller. See Hagins Motion at 19, 28-31. As the Third Circuit observed when Hagins presented these same arguments, speculation is

insufficient as a matter of law.  Hagins, 452 F. App'x. at 150.  Moreover, even if one assumed that Gary would have identified Downs as the seller of his gun, and that he would further have exculpated Hagins of any involvement, as this Court pointed out, such testimony would have opened the door to evidence of the circumstances that led to the recovery of the gun.  Tr. (9-14-09) at 168.  It certainly would not have helped Hagins' cause for the jury to focus on the fact that Hagins' straw purchased guns were destined for the hands drug dealers and other criminals.  Thus, Hagins' claim fails under both prongs of Strickland.

### C.     Hagins' Ineffective Assistance of Sentencing Counsel Claims Fail Both as a Matter of Law and as a Matter of Fact.

Hagins argues that his sentencing counsel was ineffective for failing to raise six issues related to the calculation of Hagins' Sentencing Guideline range.  However, each of those issues were, in fact, raised at Hagins' sentencing.  Although five of those six were without merit, Hagins actually prevailed on one the claims he now seeks to raise for a second time.  Both because there was no ineffectiveness, and also because Hagins' Guidelines were correctly calculated, Hagins' motion for relief should be denied.

As an initial matter, Hagins' claims are foreclosed by the fact that they have already been litigated and decided.  Although Hagins did not appeal this Court's sentencing determinations, this Court's adverse findings still bar any relitigation.  In the absence of a claim that appellate counsel was ineffective for failing to appeal, which would require Hagins to show that his appellate counsel violated both prongs of Strickland, Hagins has no basis to relitigate the same issues that he has already lost.  Even setting aside the fact that Hagins' has not in fact challenged the effectiveness of his appellate counsel, any such challenge would fail.  As the Third Circuit

has noted, one of the primary functions of appellate counsel is the exercise of professional judgment in pressing stronger claims and winnowing out the weaker. United States v. Turner, 677 F.3d 570, 578 (3d Cir. 2012). Here, with one exception, Hagins' sentencing challenges were rejected by this Court. Hagins has not, and cannot, show that his counsel's decision to focus appellate attention on other issues - which had the potential to result in reversal or a new trial - was not within the bounds of professional competence. In any event, Hagins cannot establish prejudice because this Court's sentencing determinations were correct on their merits.

First, Hagins argues that his sentencing counsel was ineffective for failing to argue that his criminal history score was overstated in that it assessed points for Hagins having committed his current crime while on probation. Hagins Motion at 16, 23-24. However, at Hagins' sentencing, his counsel made exactly this argument. During the course of the sentencing, Hagins' counsel pointed out that Hagins had not, in fact, been on probation at the time he committed the offenses of conviction. Tr. (9-14-09) 184-85. The government and the Probation Office agreed. Id. at 186-87. As a consequence, the two points attributable to that enhancement were eliminated. At the same time, however, an additional point was added, resulting in a net decrease of one criminal history point. That decrease, however, left the defendant at the same criminal history category, Level VI. Id. at 187-90. Hagins cannot establish that his counsel was ineffective for prevailing on the very point that Hagins now presses.[3]

Second, Hagins argues that his counsel was ineffective for failing to dispute the

---

3      Hagins does not dispute the resulting recalculation, or the fact that it did not alter his Criminal History Category. In any event, any such dispute would be meritless for the reasons stated by the Court on the record.

application of the Sentencing Guideline enhancement for an obliterated serial number. Hagins Motion at 16, 21-23. In fact, however, Hagins' sentencing counsel did contest the application of this enhancement. Tr. (9-14-09) at 176-78. After argument, this Court concluded that the enhancement applied. First, as a matter of legal interpretation, the Court found that the enhancement did not require that the defendant be aware of the obliteration. Id. at 176-78. In any event, as the government pointed out, the trial record was replete with evidence that Hagins had not only been aware of the obliteration of some guns' serial numbers, but that he had criticized his brother for selling a weapon with its serial number intact. Id. at 177-78. Heedless of the fact that this issue was raised and addressed at his sentencing, Hagins now argues that there was insufficient evidence to show the obliteration in the first place. See Hagins Motion at 7-9. According to Hagins, at least one of those numbers were actually legible. Id. Even setting aside the fact that this factual issue was waived, it is entirely without merit. As the PSR noted, two of the firearms straw purchased by Hagins were recovered with obliterated serial numbers that had been restored. PSR ¶ 30. While the numbers may have been legible after restoration, that does not alter the fact that they had been obliterated. Indeed, this is the very definition of the word "restore." Hagins' counsel was, therefore, not ineffective, and his present challenge is without merit.[4]

*Third*, Hagins claims that his counsel was ineffective for failing to contest the assessment of two criminal history points on account of a marijuana conviction that Hagins sustained in

---

[4]     Hagins points to the fact that one of the guns had a second serial number, which the examiner recovered from a secret location. The mere fact that a gun had two numbers does not erase the fact that one of those two had been obliterated.

2000. Hagins Motion at 16, 24. That conviction appears at PSR ¶ 53, and was one of the elements of his criminal history that Hagins challenged at his sentencing. Tr. (9-14-09) at 180-84. Although Hagins now claims that he was not sentenced to any imprisonment as a result of the 2000 state court conviction, Hagins Motion at 16, 24, he did not raise this factual challenge at the time of his sentencing, instead claiming that it was merely a municipal offense. Tr. (9-14-09) at 180-81. Regardless, however, the PSR and the sentencing record establish that Hagins received a sentence of 90 days on this conviction. PSR ¶¶ 53-54; Tr. (9-14-09) at 180-84. Other than the naked assertions in his brief, Hagins offers no evidence to the contrary. Even if his claim were not waived, an unsworn statement in his brief would be inadequate to meet Hagins' burden of establishing the existence of a violation of a constitutional right.

*Fourth*, Hagins argues that he was improperly assessed two levels for obstruction of justice. Hagins Motion at "4$^1$/$_2$." According to Hagins, he received the obstruction assessment on account of having communicated to his brother the identity of one of the witnesses against him. Id. Hagins argues that this communication was protected by the First Amendment, and that his counsel was ineffective for failing to dispute its application. Id. In fact, Hagins' counsel did argue against application of the obstruction enhancement. Tr (9-14-09) at 173-76. Hagins' counsel claimed that the basis for obstruction set forth in the PSR, that Hagins had threatened Downs, was factually insufficient. In response, the government pointed out that the sentencing record confirmed an alternate basis for that enhancement: that Hagins had directed his brother to retaliate against another witness against him. Id. After agreeing with this point, the Court noted a third basis: Hagins' perjurious testimony at trial. After discussing this alternative, the Court found, as a fact, that Hagins had lied under oath in his testimony before the trial jury. Id. at 175.

18

Under the Sentencing Guidelines, an obstruction enhancement is appropriate for a defendant who lies under oath at trial. USSG § 3C1.1, Comment 4(B). Thus, even if Hagins were correct that his efforts to retaliate against a witness were protected by the First Amendment, an unsupportable proposition, the enhancement would still be appropriate for exactly the reasons stated by the Court on the record at sentencing.

*Fifth*, Hagins argues that his counsel was ineffective for failing to contest at sentencing the four-level adjustment for having committed his offense "in connection with another felony offense," under what is now USSG § 2K2.1(b)(6)(B).[5] Hagins Motion at 5, 11. Once again, however, Hagins' counsel did object to application of this enhancement. Tr (9-14-09) at 179. As the PSR makes clear, this enhancement is appropriate on two independent grounds: (i) that the firearms were transferred from Downs to Hagins in return for crack cocaine, i.e. in connection with the distribution of crack cocaine; and (ii) that they were transferred from Hagins to gang members in Trenton, New Jersey for their own criminal purposes. PSR ¶ 31. Hagins argues that his distribution of cocaine to Downs did not constitute a felony offense because it was a gift rather than a sale. Hagins Motion at 11. Even ignoring the second independent ground for application of this enhancement, Hagins' argument fails as a matter of law. Distribution of crack cocaine is a felony offense regardless of whether or not the transfer is for remuneration. United States v. Washington, 41 F.3d 917, 919 (4th Cir. 1994) ("Sharing drugs with another constitutes 'distribution' under § 841(a)(1)."). Moreover, the evidence in this case was clear that Hagins distributed cocaine to Downs in return for guns and money. Such a transfer would certainly

---

5       At the time of the defendant's sentencing, this provision was found at USSG § 2K2.1(b)(5). PSR ¶ 31 & n.2.

constitute a "sale" if a sale were required. Thus, Hagins' argument is without merit.

*Finally*, Hagins argues that the enhancement of his Guidelines level due to the fact that his offense involved between 25 and 99 weapons was inappropriate. Hagins Motion at 18-19, 25-28. While Hagins' counsel did not specifically object to the enhancement based on the number of firearms, Hagins' current objection is premised on the same argument that underlies his claim aimed at his trial counsel: that further investigation of persons arrested in possession of straw-purchased weapons – and particularly Anthony Gary - would have been exculpatory. Id. There are two fundamental problems with this argument. First, after having heard the evidence at trial, this Court concluded that Hagins' straw purchase conspiracy involved in excess of 50 weapons. Tr (9-14-09) at 205. As Hagins recognizes, this finding alone is sufficient to sustain application of the more than 25 gun enhancement. See Hagins Motion at 12.

Second, Hagins offers no evidence to establish that there were fewer than 25 weapons. Instead, he argues that an investigation of Anthony Gary would likely have resulted in a finding that one of the weapons attributed to Hagins was actually purchased solely by Gary. Even if true, such facts would still leave the number attributable to Hagins at approximately 50, well above the threshold for the next lower enhancement. Apparently recognizing this fact, Hagins also argues that an investigation might also have led to other persons who purchased guns from Downs. Of course, as the Third Circuit pointed out in Hagins' own appeal, to establish prejudice for the purposes of ineffectiveness of counsel, Hagins is obligated to offer proof rather than speculation: "prejudice cannot be demonstrated by speculation about what the witnesses that the attorney failed to locate or depose might have said." Hagins, 452 F. A'ppx. at 150; see also United States v. DeBango, 780 F.2d 81, 86 (D.C. Cir.1986) (record failed to support claim of

prejudice where appellant failed to introduce evidence of what the witness whom counsel failed to locate would have said).  Here, Hagins relies on speculation not only about what identified witnesses would have said had they been interviewed, but also about the very existence of other unknown witnesses.  This is truly speculation piled upon speculation.  Thus, Hagins' claim fails as a matter of law.

## III.    <u>**CONCLUSION**</u>

For the foregoing reasons, Hagins' motion for relief from his conviction and sentence

pursuant to Section 2255 should be denied without the necessity of a hearing.


Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


s/ Paul G. Shapiro_____
PAUL G. SHAPIRO
Assistant United States Attorney

Date:   March 26, 2014

## <u>CERTIFICATE OF SERVICE</u>

The foregoing response to Motion for Relief Pursuant to Section 2255 will be served electronically through the District Court Electronic Case System, and/or via first class mail, upon:

> SEAN L. HAGINS, PID# 60425-050
> USP BIG SANDY
> U.S. PENITENTIARY
> P.O. BOX 2068
> INEZ, KY 41224

s/ Karen Dodd
Karen Dodd, Legal Assistant
Office of United States Attorney

Date:   March 26, 2014

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Criminal No. 06-485** |
| | : | |
| SEAN L. HAGINS | : | |

**ORDER DENYING SECTION 2255 MOTION**

AND NOW, this            day of March, 2014, upon consideration of the

defendant's motion for relief under 28 U.S.C. § 2255, and the United States' opposition

thereto, this Court finds that no grounds for relief have been presented and accordingly, it is

hereby ORDERED that the motion is DENIED.   A certificate of appealability is DENIED.


BY THE COURT:


_____
HONORABLE LEGROME D. DAVIS
*Judge, United States District Court*